IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Jul 28, 2015

| | |
|---|---|
| IN RE: | |
| MICHAEL A. SCOTT and PATRICIA J. SCOTT, | Case No. 09-11123-M<br>Chapter 13 |
| **Debtors.** | |
| | |
| PATRICIA J. SCOTT, | |
| **Plaintiff,** | |
| v. | Adv. No. 14-01040-M |
| CALIBER HOME LOANS, INC., | |
| **Defendant.** | |

## MEMORANDUM OPINION

Chapter 13 of the United States Bankruptcy Code provides debtors with an opportunity to save their assets. In most cases, the asset of choice is a house or a car. In a Chapter 13 case, a debtor may take the house payments that were unpaid prior to the filing of the case and pay them out over the life of the Chapter 13 Plan. When the plan is completed, the old payments are caught up, the debtor receives his or her discharge, and life goes on. In this case, the debtors made all of their plan payments and received their discharge. The creditor said nothing until after the discharge was entered, and then informed the debtors that they were thousands of dollars behind on their house payments. The debtors cry foul, asking the Court to hold the creditor in contempt and set things right. The creditor claims it has done nothing wrong. The matter is before the Court on plaintiff's

motion for summary judgment.[1]  The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[2]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

## Summary Judgment Standard

The United States Court of Appeals of the Tenth Circuit has held that

> Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* Put differently, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation omitted).[3]

The Court will apply this standard to the motion.

---

[1] The Court has previously denied the motion for summary judgment filed by the defendant and granted that portion of the plaintiff's motion seeking an accounting.  *See Docket No. 29.*  The only matter currently pending is the balance of plaintiff's motion for summary judgment.

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[3] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

**Background**

The players in this adversary proceeding are Patricia J. Scott ("Plaintiff" or "Ms. Scott") and Caliber Home Loans, Inc. ("Caliber"). Ms. Scott and her husband, Michael A. Scott ("Debtors") filed a Chapter 13 bankruptcy petition with this Court on April 20, 2009. At the time the bankruptcy case was filed, the Debtors were indebted to Household Finance Corporation III ("HFC"). In order to secure its debt, HFC held a first mortgage on the Debtors' residence. After the bankruptcy case was filed, HFC assigned the loan and its security to Caliber.

Debtors confirmed their Chapter 13 plan, and, together with some modifications along the way, made all the payments thereunder. The plan included payments to HFC (now Caliber) for delinquent amounts owed prior to the filing of the bankruptcy case. The plan also required the Debtors to continue their regular monthly house payments.

**Findings of Fact**

There is no genuine dispute as to the following material facts:

1. On April 20, 2009, Debtors filed their joint Chapter 13 Bankruptcy Petition and Schedules with the Court.

2. The Debtors completed the Chapter 13 Plan payments and on March 19, 2014, received their discharge.

3. On June 26, 2009, Caliber's predecessor, Household Finance Corporation III, filed its proof of claim ("Claim 17") stating the total secured claim on the Plaintiff's mortgage loan to be $180,527.66 with an arrearage of $19,073.96 and ongoing monthly payments of $1,414.19.

4. The arrearage as shown on Claim 17 filed by Household Finance Corporation III

        included the payment due for April 1, 2009.

5.     The confirmed Chapter 13 Plan as modified provided for the payment of 60 monthly mortgage payments of $1,414.19 (the "Continuing Payments"). The Continuing Payments were paid through two claims with the Trustee, a continuing payment claim and a post-petition mortgage payment arrearage claim.

6.     On September 24, 2013, Caliber filed its Notice of Post-Petition Mortgage Fee, Expenses, and Charges setting forth a post-petition expense of $2,061.82 (the "Post-Petition Expense").

7.     The Post-Petition Expense was paid in full by the Chapter 13 Trustee through the Plaintiff's Chapter 13 Plan.

8.     On January 28, 2014, the Chapter 13 Trustee filed his Notice of Early Completion of Plan Payments (the "Notice of Completion") wherein the Trustee stated "the above named Debtors have paid sufficient funds to the Chapter 13 Trustee to fully pay all allowed claims in this case provided for by the confirmed plan."

9.     On February 14, 2014, Caliber filed its Statement in Response to Notice of Final Cure Payment wherein Caliber stated that it "[a]grees that Debtor(s) has/have paid in full the amount required to cure the default on Creditor's claim" and "[a]grees that Debtor(s) is/are current with respect to all payments consistent with § 1322(b)(5) of the Bankruptcy Code."

10.     On March 19, 2014, Debtors received a discharge in their Chapter 13 bankruptcy case.

11.     On April 21, 2014, the Chapter 13 Trustee filed his Amended Notice of Final Cure

Payment and Completion of Payments Under the Plan (the "Amended Notice of Completion") wherein the Trustee stated "Mortgage is paid through the Chapter 13 Plan and is due for the May 2014 payment after the Trustee makes the final disbursement" (the "Amended Notice of Final Cure").

12. As shown by the Certificate of Mailing attached to the Amended Notice of Final Cure, a copy of the Amended Notice of Final Cure was mailed to Caliber.

13. Caliber did not file a response to or dispute the Trustee's Amended Notice of Final Cure.

14. The Plaintiff's ongoing monthly mortgage payment is $1,414.19 for principal and interest.

15. Plaintiff tendered $1,414.19 to Caliber prior to May 1, 2014.

16. On April 1, 2014, Caliber mailed a statement to the Plaintiff wherein Caliber stated that the Plaintiff was delinquent a total of $3,139.97 which includes $2,828.38 for past due monthly payments and $1,165.15 for uncollected "Late Charges."

17. At the conclusion of the Plaintiff's Chapter 13 bankruptcy, Caliber had been paid the entire prepetition arrearage, all Continuing Payments due during the pendency of the bankruptcy, and all post-petition fees, charges and expenses for which Caliber had filed a notice. As a result, at the conclusion of her Chapter 13 bankruptcy, the Plaintiff was current on her mortgage loan with Caliber as though no default ever occurred.

18. On or about April 21, 2014, the Plaintiff contacted Caliber via telephone and spoke to a Caliber representative.

19. On May 1, 2014, Caliber mailed a statement to the Plaintiff wherein Caliber stated that the Plaintiff was delinquent a total of $1,796.48 which includes $1,235.85 in uncollected late charges.

20. On May 12, 2014, Caliber mailed to the Plaintiff a letter stating: "Your recent payment was insufficient to bring your account current. Accordingly, Caliber home Loans, Inc. ("Caliber") may continue to pursue further collection efforts, including moving forward with the foreclosure process, while your account remains in default."

The Court takes judicial notice of the entry of an order of discharge in Debtors' bankruptcy case on its own motion. All other facts were alleged by the Plaintiff or Caliber in their motions for summary judgment and not controverted by the opposing party. As a result, they are deemed admitted for purposes of the pending summary judgment motion.[4]

## Conclusions of Law

Plaintiff alleges that Caliber has violated the discharge injunction by attempting to collect late fees and charges beyond those provided for as part of the Chapter 13 process. Plaintiff seeks an order holding Caliber in contempt of court together with an award of actual damages, punitive damages, and attorneys fees. Caliber contends that there has been no violation of the discharge injunction and the Plaintiff is entitled to nothing.

*Violation of the Discharge Injunction*

---

[4] *See* Bankr. N.D. Okla. LR 7056-1(B) ("All properly supported material facts set forth in the movant's statement shall be deemed admitted for the purpose of summary judgment unless specifically controverted by a statement of the non-movant that is supported by evidentiary material.").

>Section 524(a)(2) of the Bankruptcy Code provides that a discharge in bankruptcy operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.[5]

Many circuits have held that § 524 does not create a private right of action for a debtor alleging a violation of the discharge injunction.[6] The United States Court of Appeals for the Tenth Circuit has not yet opined on the issue; however, that court has made it clear that a bankruptcy court has the power to sanction a creditor for violation of the discharge injunction under the civil contempt powers found in § 105(a) of the Bankruptcy Code.[7] In such a case, the burden is on the party seeking an order of contempt to establish the necessary elements by clear and convincing evidence.[8] In order to prevail, "the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction."[9]

When a bankruptcy case is one where a debtor confirms a plan, § 524(i) comes into play. Under that section,

>The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the

---

[5] § 524(a)(2).

[6] *See Otero v Green Tree Servicing, LLC (In re Otero)*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013) (and cases collected therein) (hereafter *"Otero"*).

[7] *See In re Paul*, 534 F.3d 1303, 1306–07 (10th Cir. 2008); *Otero*, 498 B.R. at 319.

[8] *Otero*, 498 B.R. at 319.

[9] *In re Zilog*, 450 F.3d 996, 1007 (9th Cir. 2006) (citation omitted).

plan caused material injury to the debtor.[10]

This section is unambiguous. A creditor who fails to properly credit payments received under a plan violates the discharge injunction.

One of the leading treatises on bankruptcy explains the effect of § 524(i) in a simple and straightforward manner:

> Section 524(i) provides a remedy for debtors whose creditors fail to properly credit plan payments. Under this provision, the creditor's willful failure to credit payments received under a confirmed plan in accordance with the plan, constitutes a violation of the injunction of section 524(a). Although section 524(a) previously was limited to violations of the discharge order, section 524(i) is not limited to acts occurring after discharge. The section does not apply, however, if confirmation of the plan has been revoked, the plan is in default, or the creditor has not received the plan payments as required by the plan. The provision is also limited to cases in which the failure to credit payments has caused material injury to the debtor.
>
> Section 524(i) is a response to decisions in which courts questioned whether they had the ability to remedy a creditor's failure to credit payments properly. For example, it provides a remedy that the Court of Appeals for the Eleventh Circuit found missing in *Telfair v. First Union Mortg. Corp.* when a chapter 13 debtor challenged a creditor's application of plan payments to charges not contemplated by the plan. It also makes clear that a failure to properly credit plan payments that results in a post-discharge assertion that the debtor is in default is not simply a matter for state courts to resolve, but rather a critical issue that must be resolved by the bankruptcy court to ensure that the provisions and purposes of a plan are effectuated. Federal Rule of Bankruptcy Procedure 3002.1 further provides chapter 13 debtors with protections against the failure to properly credit payments by requiring mortgage creditors to notify debtors, the trustee, and the court of new fees or charges and payment changes with respect to a mortgage account and allowing debtors to seek an order declaring that a mortgage default has been fully cured at the end of a chapter 13 case.
>
> The willfulness requirement of section 524(i) should not be a significant obstacle for debtors. As in section 362(k)(1), willfulness should be interpreted to mean simply that the creditor intended to commit the act, i.e., credit the payment in the manner it did; the debtor should not need to prove that the creditor intended to violate the Code or the plan provisions. Absent a creditor's proof that the improper crediting was a mistake in conflict with the creditor's normal procedures, the creditor should be

---

[10] § 524(i).

8

presumed to have intended its acts.

> Similarly, the material injury requirement will be met in virtually every case involving a secured creditor, because the failure to properly credit payments will almost always result in a higher payoff balance for the debtor and therefore a larger lien on the debtor's property than if the payments were credited properly. A creditor that has collected the payments made by the debtor under the plan and credited them in a manner leading to a higher balance remaining on a debt has caused a material injury to the debtor. A common example of such injury is the assessment of postpetition charges to the debtor that are not in accordance with the terms of the confirmed plan. Obviously, if a creditor could subvert the terms of a plan simply by adding such charges, the cure of a default under the plan would be meaningless.[11]

This Court finds the analysis contained in *Collier* persuasive on the issues presently before it. Moreover, the Court is aware of no controlling authority to the contrary. As a result, the Court will apply the analysis contained in *Collier* to the undisputed facts of this case.

Turning to the first question, the Court finds that Caliber failed to properly credit payments received under the confirmed Chapter 13 plan. The Court bases this conclusion upon two undisputed facts:

(1) Caliber's failure to dispute the following facts contained in Scott's motion for

summary judgment:

> At the conclusion of the Plaintiff's Chapter 13 bankruptcy, Caliber had been paid the entire prepetition arrearage, all Continuing Payments due during the pendency of the bankruptcy, and all post-petition fees, charges and expenses for which Caliber had filed a notice. As a result, at the conclusion of her Chapter 13 bankruptcy, the Plaintiff was current on her mortgage loan with Caliber as though no default ever occurred.[12]

(2) the fact that on May 1, 2014, Caliber mailed a statement to the Plaintiff wherein

---

[11] 4 Collier on Bankruptcy ¶ 524.08 at 524-64.3 – 64.4 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (hereafter *"Collier"*).

[12] *Docket No. 19* at 5, ¶ 16 (allegations of Plaintiff); *Docket No. 26* (response by Caliber failing to dispute said fact).

9

Caliber stated that the Plaintiff was delinquent a total of $1,796.48 which includes $1,235.85 in uncollected late charges.[13]

If Ms. Scott were current on her loan, and Caliber properly applied her payments to the loan, there can be no late charges. The fact that Caliber claimed the late charges establishes its failure to properly credit payments.

Caliber argues that an issue of fact exists regarding whether it properly credited payments made to it by Ms. Scott, relying upon the discrepancy between the Notice of Completion (stating that Ms. Scott was due to Caliber **for** the April 2013,[14] payment) and the Amended Notice of Completion (stating that Scott was current on its obligations to Caliber **through** April 2014, and was actually due **for** the May 2014 payment). The Court is not persuaded. Caliber has admitted that Scott performed all of her plan obligations. The Amended Notice of Completion was filed on April 21, 2014, some ten days before the May 2014 payment was due. Caliber never disputed the Amended Notice of Completion, and is therefore not entitled to rely upon the Notice of Completion. Finally, the Court is struck by the absurdity of Caliber's argument, which says, in effect, "we don't know whether our loan is current or not. We have to rely upon the Chapter 13 Trustee to tell us." The suggestion that a sophisticated lender does not have the ability to properly track and apply payments on a secured loan is incredible. If true, then all people who have a loan secured by a lien upon their home (including the undersigned judge) have cause to shudder.

Caliber's conduct in failing to properly credit payments and in demanding the payment of

---

[13] *Docket No. 19* at p. 5, ¶ 18 (allegations of Plaintiff); *Docket No. 26* (response by Caliber failing to dispute said fact).

[14] The parties acknowledge that this was a typographical error, and should have been 2014, not 2013.

late charges from Ms. Scott was willful.  As noted in *Collier*, the test for willfulness is simple and rather undemanding: did the creditor intend to credit the payments received in the manner in which it did?  For purposes of § 524(i), willfulness does not require a finding of evil intent. Caliber has presented no evidence to the effect that its crediting of payments (which resulted in the claimed late charges) was unintentional or the result of a failure to apply its own internal accounting standards (whatever they may be).  Caliber acted willfully when it applied the payments to the Plaintiff's loan, calculated the late charges it claimed to be owed, and communicated its position to Ms. Scott.

Ms. Scott does not seek summary judgment on the issue of damages, asking instead that the Court set the issue of damages for trial.  The Court will do so by separate order.

### Conclusion

Plaintiff's motion for partial summary judgment is granted.  The Court finds there is no genuine issue of fact that Caliber failed to properly credit the payments it received pursuant to the confirmed plan, and that it acted willfully as it failed to do so.  The issue of the manner and amount of damages suffered by Ms. Scott shall be set for trial.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 28th day of July, 2015.

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6888.5